UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ROBERTO ESPINOSA FARIAS,

        Defendant.

CASE NO: 1:08-CR-274-21

HONORABLE PAUL L. MALONEY
U. S. DISTRICT JUDGE

**DEFENDANT'S SENTENCING MEMORANDUM, REQUEST FOR VARIANCE AND OBJECTIONS TO PRESENTENCE REPORT**

NOW COMES the Defendant, Roberto Espinosa Farias, by and through his attorney Donna J. Innes and offers this Sentencing Memorandum for the court's consideration prior to Sentencing on November 7, 2011.  Mr. Farias was originally indicted in a third superseding indictment which was filed on September 22, 2010.  Count I of the indictment charged that from the mid 1990's to 2009 the Defendant and others conspired to distribute and possess with intent to distribute cocaine in violation of 21 U.S.S.C. §§ 846, 841(a)(1), and (b)(1)(A)(ii).  Mr. Farias was not charged in any of the additional money laundering or forfeiture allegation counts as the others were.  Farias entered his plea on April 18, 2011.  Farias and counsel understand that this court is very familiar with its duties regarding the imposition of sentence after the decisions in the *United States v Booker*, 543 U.S. 220 (2005), *Gall v United States,* 128 S. Ct. 586 (2007) and *Kimbrough v United States*, 128 S. Ct. 558 (2007).  The court is also aware of its duty to impose a sentence "sufficient, but not greater than necessary" to serve the purposes of sentencing listed in 18 U.S.C. § 3553(a) and that the U.S. Sentencing Guidelines are advisory and are but one of

the factors to consider in fashioning this sentence. In looking at the § 3553(a) factors, the defendant asks the Court to consider.

### 1. The Nature and Circumstances of the Offense and the History and Characteristic of the Defendant

During the course of the conspiracy in which Defendant was involved substantial amounts of cocaine were being moved to Michigan from various sources in California. Many individuals within this conspiracy were monetarily enriched by this trafficking and so forfeitures were quite large. Mr. Farias was not part of any of this substantial monetary enrichment. He did not have a bank account or cars or furs or Rolex watches to be forfeited. What Mr. Farias did have was an insatiable appetite for the use of cocaine. He had a tremendous addiction to cocaine and it has for all intents and purposes ruined his life. Mr. Farias initially became involved with the sale of cocaine to support his habit of ingesting cocaine. He was not, by any means, the major provider of cocaine to this conspiracy.

Mr. Farias was born in Mexico but came to the United States with his parents when he was fourteen (14) years of age. His father set up an auto repair shop in a crime-ridden area in Compton, California. His parents were hard workers but watched in horror as all three (3) of their boys became involved with drugs. Two of their sons have died and now Mr. Farias is facing a lengthy prison sentence. Upon his entry into the United States with his parents, Mr. Farias learned English as a second language but did not last long in the school system. He was very good with his hands and was a good auto mechanic and also could repair and make motorcycles for racing. Mr. Farias was married and had children from his first marriage which fell apart in large part due to his use of alcohol and drugs. Life turned particularly bad when this marriage fell apart. He sank deeply into despair, alcohol, and drugs. This has been an ongoing

battle for him.  He has been clean from all drugs and alcohol since his incarceration in early 2009.  His salvation and hope have been with his children and his companion Sylvia Romero.  He does want to conquer his addiction both for himself and for his family.  He would like to see his parents before they die.

The only person in the charged conspiracy that Mr. Farias had any direct contact with was Donnie Charles.  Defendant met Mr. Charles when Charles would come into the neighborhood of his father's auto shop to go to a club.  Mr. Charles liked fancy cars and he would ask Mr. Farias to keep an eye on his car while Charles was in the club.  As time went on, Charles offered Farias cocaine for Farias' personal use.  As their relationship developed and Defendant's addiction grew, Donnie Charles inquired to Farias if he had any connections to obtain large amounts of cocaine.  Charles and Farias would meet from time to time at a cemetery.  When Farias was in bad need of cocaine for his habit Charles would give him an ounce to get by.  On at least two occasions Farias supplied Charles with kilo quantities of powder cocaine.  On other occasions Farias would supply Charles with quantities of marijuana.  Defendant was stopped by police shortly after meeting with Donnie Charles in 2008.  Defendant had $79,000.00 on his person that he had received from Donnie Charles as payment for delivery of cocaine.  This money was seized and Farias was taken into custody and then deported.

Farias has never met Charles Jackson or Regina Cawthorne-Sharif, although they may have been in a car with Donnie Charles on a few occasions with Farias met with Charles.  Donnie Charles is now dead.

## 2. The Need for the Sentence Imposed:

### (A.) To Reflect the Seriousness of the Offense, promote Respect for the Law, and to Provide Just Punishment for the Offense.

This is a serious offense, as are most Federal crimes. This was a large cocaine conspiracy case. Mr. Farias should not have been involved in this on any level and he understands that his actions were illegal and he has great remorse and a sense of personal shame and degradation for what he has done. His role however was not a large one within the context of the conspiracy. Mr. Farias seemed motivated by trying to feed his habit of using cocaine and received very little monetary remuneration for his actions. It seems clear that the sentence of imprisonment to be imposed in this case will reflect the serious nature of the offense and the need to respect the law and an individual's obligation to follow the law.

### (B). Deterrence.

The sentence in this case will be of sufficient length to both deter the Defendant and anyone similarly situated from committing a similar offense and to make them aware that this is a severely sanctioned offense. To the extent that such a sentence has a deterrent aspect, it will be effective.

### (C). Protection of the Public.

For the time that Roberto Espinosa Farias is in custody, the public is protected. If educational, vocational, and drug programs are provided and used by Mr. Farias he and the public will be better off. It is certainly unclear whether Mr. Farias will ever be able to return to the United States after his deportation at the conclusion of his sentence in this case. He understands that he will have to ask permission and get such permission from the United States Government before he will be allowed to return to the United States.

4

### (D).   The Kinds of Sentences Available

It appears that prison confinement is the required option here.  As scored in the Presentence Report, the Sentencing Guidelines provide for a range of 324 to 405 months.  If the Defendant's objections are granted, the range would come down to 210 to 262 months.  Defendant believes a variance from the advisory guidelines may be warranted based on his conduct, his age, and his health.

### (E).   Any Other Policy Statement

Two policy statements may be relevant to the Court's consideration of a sentence.  They are:

§ 5H1.1 regarding age;

and   § 5H1.4 regarding physical condition

(Nov 1, 2010, Appendix C, Amendment 739).


These policies consistently state that age can be used alone or in combination with other factors as consistent in a sentence variance.  Both sections look at age and physical condition to determine if a lesser sentence might be appropriate such as here, where the defendant is 57 years old and suffers from diabetes.


### (F).   Unwarranted Disparities

There have been several other co-defendants who are already sentenced in this matter, their ranges in sentencing have been from cases being dismissed to life in prison.  It would seem that defendant's criminal conduct warrants a sentence at the low end or below the advisory guideline range as adjusted.

### **(G).    Restitution.**

Restitution is not a factor here.

### Conclusion

Mr. Roberta Espinosa Farias urges the court to make the following findings of facts and conclusions of law:

1. That the sentencing guideline range calculated by the probation department is incorrectly scored by 4 levels due to an error in calculation of the base offense level.  (see the Defendant's Objection to scoring)

2. That a variance from the guideline range as scored by the probation department or as adjusted pursuant to the Defendant's Objection is warranted in this case.

3. That the sentencing guidelines are advisory and are but one of several factors to be considered by the court in determining the sentence  and that a sentence which is "sufficient but not greater than necessary" may be less than that provided for by the sentencing guidelines.

4. That a recommendation that the Defendant receive education, vocational, and drug rehabilitation opportunities while incarcerated would serve the purpose of sentencing under 18 U.S.C. § 3553(a).

5. That his sentence be ordered to be served concurrent to the State prison sentence he is currently serving.

6. That he be designated to a prison in the State of California, preferably Victorville or Terminal Island.

Defendant, having demonstrated acceptance of his guilt and responsibility for his actions requests that this Honorable Court be lenient and merciful in the determination of his fate.

                                Respectfully submitted,

Dated: October 31, 2011          /s/ Donna J. Innes
                                Donna J. Innes (P42150)
                                Attorney for Defendant
                                707 Academy Street
                                Kalamazoo, MI 49007
                                Telephone: (269) 345-4127
                                Facsimile: (269) 345-7924
                                Email: dji707@aol.com