1

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE WESTERN DISTRICT OF MICHIGAN

3    SOUTHERN DIVISION

4

5    UNITED STATES OF AMERICA,

6        Plaintiff,

7    v.                                    CASE NO:  1:08-CR-274

8    ROBERTO ESPINOSA FARIAS,

9        Defendant.

10   _____/

11                  * * * *

12        CHANGE OF PLEA HEARING

13                  * * * *

14

15   BEFORE:  THE HONORABLE PAUL L. MALONEY
             United States District Judge
16           Kalamazoo, Michigan
             April 18, 2011
17
     APPEARANCES:
18
     APPEARING ON BEHALF OF THE PLAINTIFF:
19
         BRIAN P. LENNON
20       Assistant United States Attorney
         P.O. Box 208
21       Grand Rapids, Michigan  49501-0208

22   APPEARING ON BEHALF OF THE DEFENDANT:

23       DONNA J. INNES
         707 Academy Street
24       Kalamazoo, Michigan  49007

25

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

2

1          Kalamazoo, Michigan

2          April 18, 2011

3          at approximately 9:17 a.m.

4                    PROCEEDINGS

5     THE COURT:  This is 08-274; The United States of

6   America vs. Roberto Espinosa Farias.  This matter is

7   before the Court for a change of plea proceeding.

8       The record should reflect that Assistant United

9   States Attorney Brian Lennon is here on behalf of the

10   government.  Attorney Donna Innes is here on behalf of the

11   defendant.  The defendant is present in person.

12       Miss Innes, welcome.  I believe this is the first

13   time you've appeared before me.

14       MS. INNES:  Yes, I have not been to the Kalamazoo

15   court.

16       THE COURT:  Well, welcome.

17       MS. INNES:  Thank you.

18       THE COURT:  Miss Innes, as I understand it, your

19   client wishes to plead guilty to Count One pursuant to a

20   plea agreement with the government; is that correct?

21       MS. INNES:  That is a correct statement, your Honor.

22       THE COURT:  All right.  Thank you.

23       Mr. Innes (sic. Farias), good morning, sir.

24       THE DEFENDANT:  Good morning, sir.

25       THE COURT:  Mr. Innes (sic. Farias), your lawyer--

3

1          MS. INNES:  Farias.

2          THE COURT:  Farias, I'm sorry.

3          Mr. Farias, your lawyer advises me that you wish to

4   plead guilty to Count One of the Indictment pursuant to an

5   agreement with the government; is that true?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  All right, sir.  In order to take a plea

8   of guilty from you, I must place you under oath.  Would

9   you raise your right hand.

10          ROBERTO ESPINOSA FARIAS - DEFENDANT - SWORN

11          THE COURT:  Thank you.

12          Mr. Farias, how old are you, sir?

13          THE DEFENDANT:  Fifty-seven.

14          THE COURT:  And how far did you go in school?

15          THE DEFENDANT:  How what?

16          THE COURT:  How far did you go in school?

17          THE DEFENDANT:  I went to-- got a GED.

18          THE COURT:  So you are able to read and write the

19   English language?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Have you taken any prescription

22   medication or any other substance which might affect your

23   ability to understand what is occurring here today?

24          THE DEFENDANT:  No, sir, not now.

25          THE COURT:  Do you understand what I'm saying to you?

4

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  If at any time I say something you don't

3    understand, I want you to ask me questions.  Do you

4    understand that?

5          THE DEFENDANT:  I will, sir.

6          THE COURT:  It's very important, sir, that you be

7    truthful here today.  A false statement could subject you

8    to penalties for perjury or prosecution for false

9    statement.  Do you understand that?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Thank you.

12         Have you had ample opportunity of discussing the case

13   with your lawyer?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And are you satisfied with her work and

16   representation of you?

17         THE DEFENDANT:  Yes, I do.

18         THE COURT:  Do you understand, sir, you have the

19   absolute right to continue your plea of not guilty and

20   proceed to trial if that's what you want to do.  Do you

21   understand that?

22         THE DEFENDANT:  Yes, I do.

23         THE COURT:  And obviously you would have the right to

24   have Miss Innes defend you throughout these proceedings.

25   Do you understand that?

5

1    THE DEFENDANT:  Yes, sir.

2    THE COURT:  All right.  Thank you.

3    Mr. Lennon, there is a plea agreement in this case.

4    MR. LENNON:  Yes, your Honor.  It was electronically

5    filed last Friday, your Honor.

6    THE COURT:  Would you summarize it for the record,

7    please.

8    MR. LENNON:  I will, your Honor.  Thank you.

9    Your Honor, in Paragraph 1, the defendant agrees to

10   plead guilty to Count One of the Third Superceding

11   Indictment.

12   Paragraph 2 is simply an acknowledgment of the

13   elements of the offense by the defendant.

14   Paragraph 3, your Honor, sets forth the penalties in

15   this case.

16   And 4 is an acknowledgment by Mr. Farias that he

17   understands what supervised release is.

18   Paragraph 5 is entitled "Stipulations as to Facts and

19   Drug Quantity," but we have removed the drug quantity

20   stipulation, so it's really just a stipulation of facts.

21   And, your Honor, I would just put on the record that

22   Mr. Farias and the government agree, and it's uncontested,

23   that between the dates set forth in Count One of the Third

24   Superceding Indictment the defendant acquired over five

25   kilograms of cocaine in the State of California and

1    distributed the cocaine to co-defendants, Charles Jackson,

2    Sr., and Donnie Charles, a/k/a D.

3         Paragraph 5B says that on or about February 17, 2008,

4    in Carson, California, Co-defendant Donnie Charles

5    delivered approximately $80,000 in U.S. currency to the

6    defendant, and that this money constituted payments for

7    five kilograms of cocaine.

8         And finally, 5C says while defendant has no personal

9    knowledge of how or to whom Charles Jackson, Sr., and

10   Donnie Charles further distributed the cocaine, he cannot

11   dispute the government's allegation this cocaine was

12   transported by others to the State of Michigan where it

13   was further distributed to both the Eastern and Western

14   Districts of Michigan as alleged in the Third Superceding

15   Indictment.

16        Paragraph 6 contains the promises made by my office.

17   First, we are not going to oppose his request for

18   acceptance of responsibility, provided he satisfies that

19   criteria.  And we are confident that the adjusted offense

20   level will be over 16, your Honor, so we acknowledge it

21   would be a timely plea if he otherwise qualifies for

22   acceptance.

23        Second, we would not file notice of defendant's prior

24   felony drugs convictions, he has two we know of.  If those

25   had been filed, Mr. Farias on a plea of guilty or

7

1    conviction on this count would be looking at mandatory

2    life without the possibility of release.  We have not and

3    will not file those notices, provided Mr. Farias fulfills

4    his promises in the plea agreement and pleads guilty

5    today.

6        We are also not going to charge him with any

7    additional crimes, provided he-- arising out of his drug

8    trafficking here in this district, provided we hear about

9    those crimes from him or his attorney prior to the date of

10   sentencing.  This promise of non-prosecution doesn't

11   include crimes he has not told us about or crimes of

12   violence or criminal tax violations.

13       We are also agreeing not to call him as a witness in

14   the government's case in chief.  As the Court is aware,

15   one of the remaining co-defendants is the defendant's son,

16   Roberto Juan Farias, Jr.

17       The defendant has agreed to the following:  He is

18   agreeing to consent to the forfeiture of all of the

19   property listed in the Third Superceding Indictment.  We

20   are not aware of-- I'm not aware that we took any

21   vehicles, accounts, or real estate, or personal property

22   belonging to the defendant, but just so that he can't make

23   a claim to have an interest in any of that property.  He

24   is also agreeing to a complete waiver, if you will, of the

25   direct appeal and collateral attack rights.  Obviously, if

8

1    the sentence were over the maximum or was-- he was

2    sentenced for any reason that was unconstitutional, he

3    would have that basis, but otherwise it is a complete

4    waiver of his appellate rates.

5        And then Paragraph 8 essentially acknowledges the

6    guidelines will be consulted.

7        Paragraph 9 of the waiver of his constitutional

8    rights by pleading guilty.

9        Paragraph 10 says that the Court is not a party to

10    this agreement, is not bound by any of the recommendations

11    or stipulations.

12        Paragraph 11 limits this agreement to my office.

13        Paragraph 12 outlines the consequences if the

14    defendant were to breach any of the provisions of the

15    agreement.

16        And then there was a deadline for acceptance of the

17    agreement, which was met by the parties.

18        And finally, the agreement acknowledgment that

19    Mr. Farias entered into this knowingly and voluntarily and

20    no other promises or conditions other than those put on

21    the record, and I know of no other promises other than

22    those contained in this agreement, your Honor.

23        THE COURT:  Thank you, Mr. Lennon.

24        Miss Innes, is the written plea agreement the

25    totality of the plea agreement?

9

1          MS. INNES:  Yes, it is, your Honor.

2          THE COURT:  All right.  Thank you.

3          Mr. Farias, I take it, sir, you have had ample

4     opportunity of reviewing the plea agreement with your

5     lawyer; is that correct?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And you've signed the plea agreement; is

8     that correct?

9          THE DEFENDANT:  Yes, I did.

10          THE COURT:  You wish to have the benefit of the

11     agreement?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Do you have any questions about your

14     obligations under the agreement?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  And, I guess, you signed this agreement

17     last Thursday; is that correct?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  And that was after full consultation with

20     your lawyer?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  Thank you, sir.

23          And you are entering into the agreement freely and

24     voluntarily; is that right?

25          THE DEFENDANT:  Yes.

10

1       THE COURT:  All right.  Thank you.

2       All right.  Mr. Espinosa, I will now set forth the

3   charge contained in Count One of the Third Superceding

4   Indictment which is as follows:

5       It's alleged that beginning on or about an unknown

6   date in the middle 1990s, and continuing through on or

7   about an unknown date in 2009, in the Southern Division of

8   the Western District of Michigan, and elsewhere, you and

9   the other named defendants did combine, conspire,

10   confederate, and agree and with Alvin Keith Jackson, Emond

11   Durea Logan, Charles Jackson, Jr., Donnie Charles, Lindell

12   Brown, Felicia Blake, Tamara Hughes, Kevin Emerson, also

13   known as Kenneth Coleman, and other persons both known and

14   unknown to the grand jury, to knowingly and intentionally

15   and unlawfully distribute and possess with intent to

16   distribute five kilograms or more of a mixture or

17   substance containing a detectable amount of cocaine, a

18   Schedule II controlled substance.  Do you understand the

19   charge, sir?

20       THE DEFENDANT:  Yes, sir.

21       THE COURT:  Do you understand that the maximum term

22   of imprisonment for this offense is life?

23       THE DEFENDANT:  Yes, sir.

24       THE COURT:  And if you plead guilty, and I accept

25   your plea, I will have to impose a sentence of at least

11

1    ten years imprisonment.  Do you understand?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  The maximum fine is $4 million.  Do you

4    understand?

5         THE DEFENDANT:  Yes, sir.

6         THE COURT:  In terms of a period of supervised

7    release, which is a term of supervision after you complete

8    your term of imprisonment, the Court must assess at least

9    five years of supervised release, and I could put you on

10   supervised release for the remainder of your life.  Do you

11   understand?

12        THE DEFENDANT:  Yes, sir, I do.

13        THE COURT:  The Court will be obligated to impose a

14   special assessment of $100 if you're convicted of this

15   offense.  Do you understand?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  There are forfeiture allegations in the

18   Indictment, and pursuant to the plea agreement, you have

19   agreed not to contest any of the allegations of

20   forfeiture.  Do you understand?

21        THE DEFENDANT:  Yes.

22        THE COURT:  Now, if you plead guilty, and I accept

23   your plea, the Court will order a presentence report in

24   the case.  Part of that presentence report will be the

25   calculation of the advisory sentencing guidelines that

12

1    pertain to your case.  Those guidelines are advisory to

2    the Court, I can go above them, I can go below them, I can

3    stay within the guidelines.  They are advisory to the

4    Court, but I can depart upward, I can depart downward, and

5    I can vary from the guidelines as well based on the

6    sentencing factors contained in the appropriate statutes.

7    Do you understand that?

8        THE DEFENDANT:  Yes, sir.

9        THE COURT:  Have you been over that with your lawyer?

10       THE DEFENDANT:  Yes, sir.

11       THE COURT:  All right, sir.

12         How do you wish to plead to Count One of the Third

13   Superceding Indictment?

14       THE DEFENDANT:  Guilty.

15       THE COURT:  Do you understand, sir, that if you plead

16   guilty and I accept your plea, you will not have a trial

17   of any kind.  Do you understand that?

18       THE DEFENDANT:  Yes, I do.

19       THE COURT:  You have the absolute right to a jury

20   trial of 12 persons or the right to be tried by a judge

21   alone, without a jury.  These rights you give up if you

22   plead guilty.  Do you understand?

23       THE DEFENDANT:  Yes, sir.

24       THE COURT:  You have the right to be presumed

25   innocent of this offense until the government proves

13

1    beyond a reasonable doubt that you are guilty.  These

2    rights you give up if you plead guilty.  Do you

3    understand?

4        THE DEFENDANT:  Yes.

5        THE COURT:  You would have the right through your

6    lawyer to question and cross examine the witnesses the

7    government calls in support of their case, that is your

8    right of confrontation or cross examination.  This right

9    you give up if you plead guilty.  Do you understand?

10       THE DEFENDANT:  Yes, sir, your Honor.

11       THE COURT:  At the trial, you would have the right to

12   call witnesses on your behalf, to subpoena those witnesses

13   into court through the subpoena power of the Court to

14   compel their attendance, and to present any other evidence

15   that you have for your defense.  These rights you give up

16   also if you plead guilty.  Do you understand that?

17       THE DEFENDANT:  Yes, I do.

18       THE COURT:  You would have the right to testify at

19   the trial if you wanted to, on the other hand, you have

20   the absolute right to remain silent, and that silence

21   could not be used against you in any way.  Do you

22   understand that?

23       THE DEFENDANT:  Yes, sir.

24       THE COURT:  The government could not call you as a

25   witness in your own case.  Do you understand that?

14

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  That's your right against compelled self

3    incrimination.  Do you understand?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Do you understand, sir, that by pleading

6    guilty you'll be forever giving up your right to a trial

7    and all the other rights that we have talked about?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  If I accept your guilty plea, this will

10   result in a conviction of the offense and the Court will

11   be obligated to sentence you for that violation.  Do you

12   understand that?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Has anybody threatened or forced you or

15   coerced you into pleading guilty?

16         THE DEFENDANT:  No, sir.

17         THE COURT:  Have there been any promises of leniency

18   or benefit, other than those contained in the plea

19   agreement?

20         THE DEFENDANT:  No, sir.

21         THE COURT:  Has anybody predicted what your sentence

22   might be if you plead guilty?

23         THE DEFENDANT:  No, sir.

24         THE COURT:  Are you pleading guilty freely and

25   voluntarily, and because you are, in fact, guilty of the

15

1    crime?

2         THE DEFENDANT:  Yes, I do.

3         THE COURT:  Do you understand, sir, that your plea

4    agreement contains a waiver of your right to appeal and to

5    collaterally attack your conviction.  Do you understand

6    that?

7         THE DEFENDANT:  Yes, sir.

8         THE COURT:  In other words, unless I sentence you

9    above the statutory maximum or on some unconstitutional

10   factor, such as race or gender or something of that

11   nature, you are not going to have a right to appeal my

12   sentence.  Do you understand that?

13        THE DEFENDANT:  Yes, sir.

14        THE COURT:  And you are not going to have the right

15   to appeal any other-- based on any other possible ground

16   other than the ones that are contained in the plea

17   agreement.  Do you understand?

18        THE DEFENDANT:  Yes, I do.

19        THE COURT:  All right, sir.  Tell me what you did

20   that leads you to believe that you are guilty of this

21   offense.  But obviously you're charged with conspiracy,

22   and it's alleged that the conspiracy began sometime in the

23   middle 1990s and continued through on or about an unknown

24   date in 2009, in the Southern Division of the Western

25   District of Michigan; is that true?

16

1       THE DEFENDANT:  Yes, sir.

2       THE COURT:  All right, sir.  What did you do that

3   leads you to believe that you are guilty of this offense?

4       THE DEFENDANT:  What I did?

5       THE COURT:  What did you do?

6       THE DEFENDANT:  Well, I used to get cocaine and give

7   it to Donnie.

8       THE COURT:  You got cocaine from some source; is that

9   correct?

10       THE DEFENDANT:  Yes, sir.

11       THE COURT:  And you gave it to who?

12       THE DEFENDANT:  Donnie Charles.  I just give it to

13   him, but I didn't know about all of those people that's in

14   the paper.

15       THE COURT:  So you gave it to one person?

16       THE DEFENDANT:  Yes.

17       THE COURT:  Charles.  Would that be Charles Jackson?

18       THE DEFENDANT:  Donnie Charles.

19       THE COURT:  Oh, Donnie Charles, I'm sorry, I

20   misunderstand you.

21       You gave the cocaine to Donnie Charles?

22       THE DEFENDANT:  Yes, sir.

23       THE COURT:  And so you and he agreed that you were

24   going to traffic in cocaine together?

25       THE DEFENDANT:  Yes, sir.

17

1       THE COURT:  And was this in an amount greater than

2   five kilograms?

3       THE DEFENDANT:  Yes, sir.  Because in those days, I

4   was using cocaine real heavily.

5       THE COURT:  You were using cocaine yourself?

6       THE DEFENDANT:  Yes, sir.

7       THE COURT:  So you decided to traffic in cocaine to

8   get money; is that correct?

9       THE DEFENDANT:  Yes, to buy for me or you know.

10      THE COURT:  So you might have gotten a cut of the

11  cocaine, is that what I hear you saying?

12      THE DEFENDANT:  Yes.

13      THE COURT:  You got some of the cocaine that you--

14      THE DEFENDANT:  Yes.

15      THE COURT:  Okay.  And there's no question in your

16  mind this was cocaine; is that right?

17      THE DEFENDANT:  Yes, it was cocaine.

18      THE COURT:  And you knew it was illegal to do this?

19      THE DEFENDANT:  Yes, I do, sir.

20      THE COURT:  But you did it anyway?

21      THE DEFENDANT:  I did it because I was real under the

22  influence.

23      THE COURT:  All right.  But you knew what you were

24  doing, correct?

25      THE DEFENDANT:  Yes.

1      THE COURT:  No question about that?

2      THE DEFENDANT:  No question, sir.

3      THE COURT:  All right.  And it's contained in the

4   plea agreement that you do not contest the fact that more

5   than five kilograms of this cocaine got to the State of

6   Michigan; is that correct?

7      THE DEFENDANT:  Yes, sir.

8      THE COURT:  It's also contained in the plea agreement

9   that on or about February 17, 2008, in Carson, California,

10   a Co-defendant Charles delivered approximately $80,000 in

11   U.S. currency to you; is that correct?

12      THE DEFENDANT:  Donnie Charles, sir.

13      THE COURT:  Donnie Charles gave you $80,000?

14      THE DEFENDANT:  Yes, sir.

15      THE COURT:  And that was payment for five kilograms

16   of cocaine; is that right?

17      THE DEFENDANT:  Yes.

18      THE COURT:  So Mr. Donnie Charles was the only

19   co-conspirator that you had contact with; is that right?

20      THE DEFENDANT:  Yes, sir.

21      THE COURT:  Mr. Lennon, satisfied with the facts?

22      MR. LENNON:  I am, your Honor.  But for

23   clarification, could I ask a couple questions?

24      THE COURT:  Sure.

25      MR. LENNON:  Mr. Farias, on some of the times when

19

1    you delivered the cocaine to Donnie Charles, was there

2    another black man with him?

3         THE DEFENDANT:  Sometimes, but he wasn't there-- but

4    I just talk to Donnie Charles.

5         MR. LENNON:  You just dealt with Donnie Charles?

6         THE DEFENDANT:  Yes.

7         MR. LENNON:  But sometimes you saw another black man

8    there?

9         THE DEFENDANT:  In the car, yes.

10        MR. LENNON:  You were informed that was indeed

11    Charles Jackson, Sr.?

12        THE DEFENDANT:  No.

13        MR. LENNON:  Did you learn that from any of the

14    agents or anything?

15        THE DEFENDANT:  No.

16        MR. LENNON:  And then would you have any reason to

17    dispute that it was Charles Jackson, Sr., who was with

18    Donnie Charles on those occasions?

19        THE DEFENDANT:  No.

20        MR. LENNON:  No reason to dispute that?

21        THE DEFENDANT:  No, I don't really know it was him or

22    not.

23        MR. LENNON:  Because you dealt with Donnie Charles?

24        THE DEFENDANT:  Just with Donnie Charles.

25        MR. LENNON:  Now, on that delivery of the $80,000

20

1    cash by Donnie Charles?

2        THE DEFENDANT:  Uh-huh.

3        MR. LENNON:  There was a black female with him, was

4    there not?

5        THE DEFENDANT:  Yes, black female.

6        MR. LENNON:  Black female?

7        THE DEFENDANT:  Female.

8        MR. LENNON:  And would you have any reason to dispute

9    that's Co-defendant Regina Cawthorne-Shariff?

10       THE DEFENDANT:  No.

11       MR. LENNON:  Because you don't know who she was?

12       THE DEFENDANT:  I didn't know who it was.

13       MR. LENNON: You just dealt hand-to-hand with Donnie

14    Charles?

15       THE DEFENDANT:  Just with Donnie Charles.

16       MR. LENNON:  Thank you for clarifying.

17       THE COURT:  Miss Innes, satisfied with the facts?

18       MS. INNES:  I am, your Honor.

19       THE COURT:  Thank you.

20       The Court is also so satisfied.  I find the plea to

21    be freely and voluntarily entered without promises of

22    leniency or benefit except as contained in the plea

23    agreement.

24       The Court finds no evidence of coercion.

25       The Indictment as to Count One factually accurate.  I

1    should say, the Third Superceding Indictment is factually

2    accurate as to this defendant.

3        The defendant is actually guilty of the violation.  I

4    accept the plea of guilty and he stands convicted

5    thereof.

6        A presentence report is ordered.  Sentencing date

7    will be noticed.  The Court orders the preparation of a

8    presentence report.  And in the meantime, the defendant

9    will be remanded to the custody of the marshal to await

10    sentencing.

11        Anything further, Mr. Lennon?

12        MR. LENNON:  No, your Honor.  Thank you.

13        THE COURT:  Miss Innes?

14        MS. INNES:  No, your Honor.  Thank you.

15        THE COURT:  Thank you.

16        COURT CLERK:  All rise, please.

17        Court is in recess.

18        (At 9:37 a.m., proceedings were concluded.)

19

20

21

22

23

24

25

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

22

1

2

3

4                         REPORTER'S CERTIFICATE

5

6

7          I, Kathleen S. Thomas, Official Court Reporter for

8     the United States District Court for the Western District

9     of Michigan, appointed pursuant to the provisions of Title

10    28, United States Code, Section 753, do hereby certify

11    that the foregoing is a true and correct transcript of

12    proceedings had in the within-entitled and numbered cause

13    on the date hereinbefore set forth; and I do further

14    certify that the foregoing transcript has been prepared by

15    me or under my direction.

16

17

18                    /s/

19     _____
        Kathleen S. Thomas, CSR-1300, RPR
       U.S. District Court Reporter
20      410 West Michigan
       Kalamazoo, Michigan   49007

21

22

23

24

25


            KATHLEEN S. THOMAS, U.S. District Court Reporter
            410 West Michigan Avenue, Kalamazoo, Michigan  49007
                            (269)385-3050