UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                    Case no. 1:08-cr-274-21

v.

                                    Hon. Paul L. Maloney

ROBERTO ESPINOSA FARIAS,          United States District Judge

    Defendant.
_____/

## DEFENDANT'S RESPONSE TO
## SENTENCE MODIFICATION REPORT

Roberto Espinosa Farias, by and through his counsel, Pedro Celis of the Federal Public Defender's Office, submits the following response to the Sentence Modification Report filed on March 16, 2017. (ECF No. 1047, Sentence Modification Report (SMR), PageID.10682-10686). The SMR determined that Mr. Espinosa Farias is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2) and United States Sentencing Guidelines Amendment 782. (ECF No. 1047, SMR, PageID.10685). For the following reasons, Mr. Farias respectfully requests that this Honorable Court grant his motion for a reduced sentence and impose a sentence that is sufficient, but not greater than necessary, to serve the purposes of sentencing—in this case, a sentence at the bottom of the amended guideline range.

Mr. Farias pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine. Although Mr. Farias pleaded guilty,

he did not receive credit for acceptance of responsibility. (ECF No. 1047, SMR, PageID.10684). Accordingly, his guideline range was 324 to 405 months. (ECF No. 1047, SMR, PageID.10684). The Court determined that a middle-of-the-guidelines sentence was appropriate. (ECF No. 745, Sentencing Transcript, PageID.4905). However, the Court also applied U.S.S.G. § 5G1.3 and credited Mr. Farias with the 25 months he had served in state custody on a charge related to his federal offense. (ECF No. 745, Sentencing Transcript, PageID.4905-4906). Accordingly, the Court determined that a sentence of 365 months would be appropriate and subtracted 25 months to reach a sentence of 340 months. (ECF No. 745, Sentencing Transcript, PageID.4905-4906).

In 2016, Mr. Farias filed a motion to reduce his sentence pursuant to Guideline Amendment 782 and 18 U.S.C. § 3582(c)(2). (ECF No. 1043, Motion for Reduction of Sentence, PageID.10674). The Probation Office prepared a SMR, indicating that Mr. Farias was eligible for a reduction and that reducing his sentence to 275 months would be consistent with the guideline's policy statements. (ECF No. 1047, SMR, PageID.10685-10686).

When addressing a motion for sentence modification under 18 U.S.C. § 3582, courts consider the usual sentencing factors found in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582. Additionally, the commentary to U.S.S.G. § 1B1.10 provides that the court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction. § 1B1.10, comment (n.1)(B)(iii). The court may consider the defendant's post-sentencing conduct to determine whether a reduction is warranted and the extent of the reduction. § 1B1.10, comment (n.1)(B)(iii).

Mr. Farias agrees with the SMR's conclusion that he is eligible for a sentence reduction. In addition, Mr. Farias has no legal objection to the calculation of the amended guideline range. However, for two reasons, Mr. Farias believes that a sentence below the SMR's recommendation of 275 months is appropriate.

First, the SMR's recommended sentence appears to rely on an overly simplistic calculation. 340 months is one-fifth of the way between the low and high ends of Mr. Farias's original sentencing guidelines.[1] Similarly, the SMR's recommended sentence of 275 months is one-fifth of the way between the low and high end of Mr. Farias's current guidelines.[2]

However, as explained earlier, the Court actually determined that a mid-guideline sentence was appropriate. (ECF No. 745, Sentencing Transcript, PageID.4905). The Court reached 340 months by giving Mr. Farias credit for the time he had served on a related state sentence. (ECF No. 745, Sentencing Transcript, PageID.4905-4906).

Thus, assuming that nothing has changed, the appropriate starting point for Mr. Farias's sentencing reduction is the middle of the amended guidelines: 294 months.[3] And, as the Court determined, § 5G1.3 calls for a reduction of 25 months for the time that Mr. Farias served on a related state sentence. Accordingly, a calculation of Mr. Farias's sentence that substitutes the amended guidelines for the original guidelines—while leaving

---

[1] 405 – 324 = 81. 81 x 0.2 = 16.2. 324 + 16.2 = 340.2.
[2] 327 – 265 = 65. 65 x 0.2 = 13. 262 + 13 = 275.
[3] 327 – 265 = 65. 65 x 0.5 = 32.5. 262 + 32.5 = 294.5.

3

the Court's other decisions unchanged—results in a sentence of 269 months.[4]  Thus, if the Court determines that there is no reason to depart from its original sentencing decisions, a reduced sentence of 269 months is appropriate.

Second, Mr. Farias's post-sentencing conduct warrants a lower sentence.  Mr. Farias has nearly six years of post-sentencing conduct, during which he has used his time in prison exceptionally well.  As the SMR notes, Mr. Farias completed his General Education Diploma while in custody.  (ECF No. 1047, SMR, PageID.10685).  Mr. Farias has also worked hard at developing vocational skills.  He has completed over 330 hours of vocational training in automotive trades, recycling technology, and warehousing.  (Attachment A, Progress Report, p. 2; Attachment B, Certificates, p. 3, 5-7).  Currently, Mr. Farias is enrolled in two vocational course in building trades.  (Attachment A, Progress Report, p. 2).

Mr. Farias has also taken a number of other courses.  He completed a drug abuse program, a money management life skills class, ACE classes on "Thinking on Your Feet" and "Attitude Adjustment," as well as art classes working with leather and wood.  (Attachment A, Progress Report, p. 2; Attachment B, Certificates, p. 1-2, 8-11).

While incarcerated, Mr. Farias has been consistently employed, with the only gap in his employment occurring when he was transferred to a different facility.  (Attachment A, Progress Report, p. 3).  Working in the recycling department, Mr. Farias received an employee of the month award.  (Attachment B, Certificates, p. 4).

---

[4] $294.5 - 25 = 269.5$.

Mr. Farias's letters of recommendation also speak volumes to his character and the strides he has made while incarcerated. (Attachment C, Letters, p. 1-4). The letters, written by instructors and supervisors who have known Mr. Farias for almost three years, demonstrate that Mr. Farias has dedicated himself to his employment. For example, the recycling coordinator at his facility states:

> Mr. Farias is hard working, professional, has a positive attitude, and is very dependable. He has shown great problem solving skills, as he [h]as always presented me with well thought out solutions to everyday problems. Mr. Farias above all is a team player. He always seems to be motivated by the best interest of the department and is one of the first orderlies to volunteer for tasks, sometimes not even knowing what I'm going to ask him to do.

(Attachment C, Letters, p. 1).

Similarly, a vocational training instructor states that Mr. Farias's "ability as a Head Orderly and Student is almost unmatched by his peers, all while showing an in-depth knowledge and enthusiasm to mentor or assist other inmates." (Attachment C, Letters, p. 3).

These letters also demonstrates that the people who have interacted with Mr. Farias believe that he can be a productive member of society. For example, a vocational training instructor states:

> It's my opinion that the life skills and ability shown here at [Mr. Farias's facility] will enable him to have a smooth and successful transition back to society. I have extreme confidence he has the adequate tools needed to be a positive influence for all around him, and those whom he has worked side by side with.

(Attachment C, Letters, p. 3).

Likewise, the facility's safety coordinator notes, "On a personal level, may I just say that I really like Mr. Farias, and I have no doubts about his abilities to succeed in the future." (Attachment C, Letters, p. 4).

At Mr. Farias's sentencing, evidence showed that he could be a positive member of society during the times he was not struggling with addiction. Mr. Farias's daughter wrote a letter, informing the Court that her father's choices angered her and broke her heart, and that she had witnessed his struggles with addiction first-hand. (ECF No. 674-1, Attachments to Sentencing Memorandum, PageID.3921-3922). Nonetheless, she remembered the positive things about her father:

> I can say that I am grateful he always pushed me to shoot for the stars, to never second-guess myself, and to believe in myself with all my heart. He was unable to receive a higher education but wanted his children to have opportunities. He was very passionate when he spoke to me about going to school. He pushed me to do my best and always made me feel as though I was the apple of his eye when I did well academically. He believes in me.
>
> He wanted me to depend on myself, to be self reliant and taught me to fix things around the house. He also taught me everything I know about cars: How to change tires, clutches, gaskets, brakes and even-out brake rotors, tune-ups, differentials; How to start your car when your starter goes out; how you keep control when you lose traction in gravel. He imparted an infinite amount of wisdom. He is a very skilled mechanic and made sure I knew what to do if I ever had engine trouble.
>
> He never wanted me to be the "damsel in distress," but always told me to be a "brave female warrior." I was encouraged to take self-defense and he was proud "he never had to worry about me," when it came time for me to date.
>
> It was important for him that I was proud of my heritage. I remember at the age of 9, I knew the names of all the Spanish Conquistadores. He instilled a great sense of pride in me. Also important though, I was taught to be tolerant of other people and cultures. He encouraged me to travel and learn several languages. He taught me that racism was counter-productive to

the good of humanity and when I was little told me I could marry anyone of any color so-long as I was happy.

He taught me to fight for injustice and for the indigent. It was something that made an impact on me and I have chosen a career accordingly.

I was not allowed to take things for granted. My father sometimes would drive me through "skid-row," just to make a point about how we are all blessed and why we should give to others.

He loved animals very much and taught me to never trust anyone who was cruel to animals.

He expected me to set an example for my brothers and sisters and I hope I have not let him down.

There is much I can demonstrate about my father's goodness and kindness. He has impacted me in a great way. I have learned a great deal from him and I am so saddened he has gotten himself in this predicament. I am proud that he is holding himself accountable and told me he was prepared for what was to come. It is responsible and honest. It is what I expect of him. It is what he taught me.

(ECF No. 674-1, Attachments to Sentencing Memorandum, PageID.3922).

Mr. Farias's letters of recommendation demonstrate that, while incarcerated, he has returned to being a person who can productively contribute to society. This post-sentencing conduct warrants a further reduction in Mr. Farias's sentence. The Court cannot impose a sentence lower than 262 months. § 1B1.10(b)(2)(A). Thus, in this case, Mr. Farias's post-sentencing conduct warrants at least the modest reduction from 269 months to 262 months.

Reducing Mr. Farias's sentence would not pose a danger to the community. As of April 23, Mr. Farias will be 63 years old. (Attachment A, Progress Report, p.1). His age

indicates that he would have a low risk of recidivism even if released today.[5] Even if the Court grants the greatest possible reduction, Mr. Farias will be in his late 70s by the time he is released. Additionally, ICE has placed a hold on Mr. Farias, and he will almost certainly be deported after he has finished serving his sentence. (ECF No. 1047, SMR, PageID.10685; Attachment A, Progress Report, p.1). Further, research shows that reducing sentences under drug guideline amendments does not increase the chance of recidivism.[6] Under these circumstances, reducing Mr. Farias's sentence poses no danger to the community.

Accordingly, Mr. Farias requests the Court to reduce his sentence to the bottom of his amended guideline range.

Mr. Farias agrees that the other aspects of his original sentence, such as the terms of his supervised release and the imposition of a fine, should remain unchanged.

However, for the reasons discussed below, Mr. Farias asks that the amended judgment accurately reflect the Court's original determination that Mr. Farias's sentence was imposed to run concurrently with his undischarged state sentence.

As discussed earlier, the Court applied § 5G1.3 at sentencing. It determined that Mr. Farias's state conviction was for conduct relevant to his federal offense. (ECF No.

---

[5] United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, pg. 12 (2004), http://www.ussc.gov/sites/default/files/pdf/researchand-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf (finding that recidivism rates decrease with age and are less than 10 percent for those over 50 years of age)
[6] United States Sentencing Commission Guidelines Manual, Supp. to App'x C, Amendment 782, pg. 74 (Nov. 2015) (finding that sentence reductions based on recent drug guideline amendments have had no statistically significant impact on recidivism rates).

745, Sentencing Transcript, PageID.4895, 4905-4906). Accordingly, the Court gave Mr. Farias credit for the portion of his state sentence that he had already served. (ECF No. 745, Sentencing Transcript, PageID.4905-4906). The Court also followed U.S.S.G. § 5G1.3(b)(2) by imposing his federal sentence to run concurrently with the remainder of his state sentence. (ECF No. 745, Sentencing Transcript, PageID.4905-4906). The Court "order[ed] this sentence to be concurrent to any undischarged term of imprisonment that [Mr. Farias] ha[d] received in the State of California." (ECF No. 745, Sentencing Transcript, PageID.4905-4906).

However, the judgment against Mr. Farias does not explicitly state that the Court imposed the sentence to run concurrently with his undischarged state sentence. (ECF No. 682, Judgment, PageID.4100-4105).

Perhaps due to this oversight, the Bureau of Prisons (BOP) currently treats Mr. Farias's sentence as if it were impose to run consecutively to his state sentence. According to the BOP, Mr. Farias's "Controlling Sentence Began" on March 13, 2013. (Attachment A, Progress Report, p. 1). The BOP's projected release date also uses March 13, 2013 as the date Mr. Farias's 340-month sentence began.[7]

However, Mr. Farias's sentence was imposed on November 7, 2011. (ECF No. 682, Judgment, PageID.4100). Thus, his sentence should have begun to run on that date. In

---

[7] Mr. Farias's BOP projected release date is November 17, 2037. The BOP's release date calculator assumes that the inmate will receive good time credit. *Inmate Locator Information*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/about_records.jsp (last visited April 13, 2017). After accounting for good time credit, a 340 month sentence results in 296 months and 5 days of actual incarceration. 18 U.S.C. § 3624(b). 296 months and 5 days of incarceration beginning on March 13, 2013 yields November 17, 2037 as the projected release date.

9

contrast, using March 13, 2013 as the start of Mr. Farias's sentence is consistent with a sentence imposed consecutive to his undischarged state sentence.[8]

This Court clearly and unequivocally ordered a sentence concurrent with Mr. Farias's undischarged state sentence. Accordingly, Mr. Farias asks that the amended judgment clearly reflect the Court's intentions, and indicate that Mr. Farias's sentence began to run on November 7, 2011.

For these reasons, Mr. Farias respectfully requests that this Honorable Court grant his motion for reduction of his term of imprisonment under 18 U.S.C. § 3582(c) and reduce his sentence to the bottom of the amended guideline range.

Respectfully submitted,

SHARON TUREK
Federal Public Defender

Dated: April 20, 2017

/s/ Pedro Celis
PEDRO CELIS
Research & Writing Specialist
Office of the Federal Defender
50 Louis, NW, Ste. 300
Grand Rapids, MI 49503
(616) 742-7420

---

[8] Mr. Farias received his five-year state sentence on August 20, 2009. (ECF No. 1048, Final PSR, PageID.10712). Assuming he received credit for time served and good time credit, March 13, 2013 is consistent with the end of his state sentence.